IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, YOUNGSTOWN

| | |
|---|---|
| ANDREW ERDOS, DAVID ANDERSON, and VALLEY VIEW MHP LLC, individually and on behalf of all others similarly situated, | CASE NO.: 4:23-cv-00268 |
| | Judge Benita Y. Pearson |
| Plaintiffs, | |
| | Magistrate Judge Amanda M. Knapp |
| v. | |
| NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, JOHN DOE(S) 1-20, and ABC CORP(S). 1-20. | PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF |
| Defendants. | |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs hereby respectfully move this Court for a temporary restraining order and preliminary injunction. A temporary restraining order and preliminary injunction is necessary to prevent the destruction of highly relevant evidence related to the train derailment in East Palestine, Ohio that was caused by Defendants Norfolk Southern Corporation and Norfolk Southern Railway (hereinafter Defendants or Norfolk Southern). Plaintiffs' Motion is support by the following Memorandum of law.

MEMORANDUM OF LAW

I. INTRODUCTION

Plaintiffs' class action complaint involves the recent train derailment on February 3, 2023, in East Palestine, Ohio. On Friday, February 3, 2023, at approximately 9:00 pm, Norfolk Southern Freight Train 32N, consisting of 149 cars and operated by Defendants, was carrying abnormally

1

dangerous and ultrahazardous chemicals including, but not limited, to vinyl chloride, while traveling from Illinois to Pennsylvania. Approximately 38 of the train cars derailed in East Palestine, 11 of which were carrying hazardous materials, including five cars of vinyl chloride. The train was ablaze when it derailed and the fire continued to burn for several days, sending dangerous levels of toxic chemicals into the air and water. Officials issued a shelter in place order for the town of East Palestine, affecting approximately 4,700 people. Subsequently, an evacuation order was issued effecting hundreds of residents in both Columbiana County, Ohio and Beaver County, Pennsylvania. Due to dangerously rising temperatures in the railcars containing vinyl chloride, on Monday, February 6, 2023, Defendants decided to release and burn off the vinyl chloride. The fiery controlled release sent a large plume of thick black smoke into a mushroom cloud, which dispersed toxic hydrogen chloride and phosphene gas into the atmosphere, causing further contamination by, and exposure to toxic chemicals. The evacuation order was lifted on the evening of Wednesday, February 8, 2023, allowing residents to return to their homes if they so desired.

Plaintiffs' complaint was filed on February 9, 2023, and served on February 10, 2023. A letter for preservation of evidence was sent to Defendants' counsel on February 10, 2023 — a demand that certainly covers the evidence that exists at the derailment site. In regard to physical evidence, Plaintiffs requested Norfolk Southern provide adequate notice of any future inspections.

    **A.    Defendants Have Unilaterally Dictated The Terms Of Inspection And When They Will Destroy Evidence**

On February 23, 2023, at approximately 3:30 pm, Plaintiffs' counsel received a letter from Defendants' counsel, Scott D. Clements. (Ex. 1). Counsel's letter states that because the National Transportation Safety Board (NSTB) has notified Norfolk Southern that it has formally lifted the hold on the 11 hazardous material railcars, Norfolk Southern has unilaterally decided that it will

only continue to hold those railcars at the site until Wednesday, March 1, 2023. Accordingly, after March 1st, Norfolk Southern will remove the wreckage and by doing so will intentionally destroy relevant evidence at the site. Without any discussion with Plaintiffs' counsel, Defendants unilaterally chose to make the railcars available for inspection only on February 28, 2023 and March 1, 2023. After that time period, Norfolk Southern's counsel advises that the railcars "will be removed or otherwise destroyed so that Norfolk Southern can continue its work at the site." (Ex. 1.)

Contrary to Defendants' unlimited access to the derailment site since the date of this event, Plaintiffs and their experts have not yet had any time to view and inspect the derailment site, nor have they been given access to any relevant evidence, including the 11 hazardous material railcars. Norfolk Southern has had unfettered access to the wreckage it caused and the ability to do testing, take photographs, collect measurements and samples, and conduct any other discovery it so chose for the last three weeks. Now, Norfolk Southern has unilaterally decided to give Plaintiffs' experts access to its carnage for only two days to conduct any investigation that is needed. Plaintiffs have retained several experts to support their claims, including a derailment reconstructionist and metallurgical engineer. While certain experts are available for the inspection on Defendants' selected dates, the experts, not having seen the site, cannot guarantee that the limited timeframe of 1-2 days will provide the necessary opportunity to complete their inspections and analysis. (Ex. 2, Affidavit of Thomas E. Johnson, P.E.) (Ex 3, Affidavit of Robert W. Halstead, P.E.). In fact, Plaintiffs' experts contend that more than two days is necessary for a thorough and complete inspection after an agreed upon protocol is in place. (Ex. 2 & 3.)

Plaintiffs respectfully request that a temporary restraining order be issued to prevent Defendants from removing and destroying the 11 railcars — and any evidence — from the site on

3

March 1, 2023 and until such a time when Plaintiffs' experts have had sufficient time to visit the wreckage and perform the analyses needed. Simply put, two days of access when Norfolk Southern will have had more than 24 days of access is not reasonable. Furthermore, as the Court is likely aware, Plaintiffs' case is not the only lawsuit filed involving the Norfolk Southern derailment.[1] Plaintiffs in the other filed cases also have retained experts who have the same right to examine the site and railcars.

A temporary restraining order is necessary to prevent the destruction of some of the most relevant and probative evidence in this case. It will also allow Plaintiffs' counsel to continue their coordination with other plaintiffs' counsel and experts to avoid multiple groups trampling through the site and potentially altering evidence inadvertently. Moreover, a temporary restraining order will allow the parties time to come to an agreement on details and protocols for, among other things, the inspection, including dates of inspection, times of inspection, length of inspection, the handling and ultimate removal of evidence from the site. And if that fails, a temporary restraining order allows time for the Court to weigh in on what is appropriate under the circumstances. The terms and details of these important inspections should not be unilaterally dictated by Defendants. Having an established and agreed-upon protocol for inspection is necessary so that all the experts have equal access and evidence is not moved, changed, or altered in such a manner that it may affect the evidence for later experts. Unlike the irreparable harm Plaintiffs will suffer from the destruction of evidence, Norfolk Southern suffers no harm should an injunction maintaining the status quo be issued by this Court.

---

[1] As of the date of this filing, Plaintiffs are aware of 12 other class actions filed in the Northern District of Ohio related to the Norfolk Southern derailment.

II.    **ARGUMENT**

    A.    **Legal Standard**

The party seeking injunctive relief bears the burden of establishing entitlement to such relief. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 1996). The Sixth Circuit has set forth the factors for a court to balance when determining whether to grant a temporary restraining order and/or preliminary injunction.[2] *Just Funky, LLC v. Unique Logistics Int'l N.Y. City, LLC*, 2021 U.S. Dist. LEXIS 69361 at *4 (N.D. Ohio April 9, 2021), citing *Am. Civil Liberties Union Fund of Mich. v. Livingtson Cnty.*, 769 F.3d 636, 642 (6th Cir. 2015). The factors to be considered are:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Just Funky, LLC*, 2021 U.S. Dist. LEXIS 69361 at *4-5 citing *Am. Civ. Liberties Union*, 769 F.3d at 642.

When deciding whether to issue a temporary restraining order, particular attention should be paid to the irreparable harm element. *Recon Nat. Res., LLC v. Cook*, 2020 U.S. Dist. LEXIS 65251 at *4 (N.D. Ohio, April 14, 2020). The factors to be considered are not prerequisites, but rather considerations that must be balanced against one another, keeping in mind that a temporary restraining order is "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Id.*

    1.    **Plaintiffs' Likelihood of Success on the Merits**

To establish a likelihood of success on the merits, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make

---

[2] The standard for a preliminary injunction is the same as that for a temporary restraining order. *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004).

5

them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp. v. Cafcomp Sys.,* 119 F.3d 393, 402 (6th Cir. 1997). Even if the plaintiff fails to show a strong or substantial probability of ultimate success on the merits, the court may grant a preliminary injunction if there are serious questions going to the merits and the irreparable harm outweighs any potential harm to defendant. *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 860 (6th Cir. 1992.)

Plaintiffs' complaint asserts several causes of action: negligence, strict liability, medical monitoring, private nuisance, public nuisance, statutory nuisance, and trespass. Examining a few of Plaintiffs' claims reveals Plaintiffs will likely be successful on the merits.

As to negligence, Plaintiffs allege Defendants had a duty, consistent with federal regulations and industry practices and procedures, to use reasonable care during the operation of their railroad and transportation of hazardous chemicals. Such duties include, *inter alia*, ensuring proper procedures for timely identifying malfunctions of the railway and railcars to prevent derailments while transporting hazardous materials; ensuring proper procedures and training for responding to derailment of railcars containing hazardous materials; ensuring proper procedures and training for response to mechanical malfunctions of a railcar; and instituting proper procedures to avoid exposing hazardous materials to the environment. Plaintiffs' allege Defendants breached their duties to Plaintiffs as they, *inter alia*, failed to operate, maintain, inspect, and/or repair the railway and railcars in such a manner to ensure their safe and proper operation while carrying hazardous materials; failed to ensure proper procedures or systems for timely identifying any malfunctions of the railway and railcars in order to prevent or mitigate derailments; and failed to institute proper procedures to avoid exposing hazardous materials to the environment. While this case has only been pending for two weeks and no discovery has been conducted, based on what

has been reported to date, Plaintiffs respectfully submit that they will likely be successful on their negligence claim. To quote NTSB chair Jennifer Homendy, "This was 100% preventable. . . [W]e call things accidents. There is no accident."[3]

Ohio law follows the Restatement (Second) of Torts, § 519 which states that "one who carries on an abnormally dangerous activity is subject to [strict] liability for harm to the person, land, or chattels of another resulting from the activity, although he exercised the utmost care to prevent the harm." *Hirsch v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 124211 at *13 (N.D. Ohio, Oct. 22, 2008.) Plaintiffs allege Defendants engaged in an abnormally dangerous and/or ultrahazardous activity for which common law strict liability applies for transporting hazardous substances, including vinyl chloride, through a residential community in a manner Defendants knew would be dangerous and without taking proper precautions. Again, based on the information that has come to light to date, it is known Defendants were carrying five railcars of vinyl chloride — as well as multiple cars of other ultrahazardous and carcinogenic substances — that derailed in a residential community. Furthermore, Defendants subsequent intentional release and burn of the vinyl chloride in a trench created for that purpose resulted in a release of other dangerous byproducts that contaminated the air, water, and soil of this residential community. Further examination, inspection, and testing will be required, particularly of the derailment site and hazardous railcars that Defendants plan to remove and destroy in the next 5 days.

A private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Woods v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 94 (8th Dist.) For a "private nuisance claim to be actionable, the invasion must be either intentional and unreasonable,

---

[3] *Norfolk Southern alerted to overheated wheel bearing right before Ohio train derailment*, Cincinnati Enquirer, February 23, 2023.

7

or unintentional but caused by negligent, reckless, or abnormally dangerous conduct." *Id.* Plaintiffs allege that Defendants knew or should have known that the hazardous chemicals they were transporting, including vinyl chloride and butyl acrylate, as well as the combustible by-products of phosgene and hydrogen chloride were hazardous and harmful to real property and human beings. Defendants, through their negligent, reckless and/or intentional acts and omissions have contaminated real property located in and around East Palestine.

Clearly, the allegations raised in Plaintiffs' complaint are serious, substantial, and fair ground for litigation such that more deliberate investigation is warranted, particularly when it comes to the evidence at the derailment site. Moreover, the risk of irreparable harm to Plaintiffs if the temporary restraining order is not granted weighs in favor of granting such relief.

   **2.  Irreparable Harm**

Irreparable harm is "an injury for which there is no plain, adequate, and complete remedy at law, and for which money damages would be impossible, difficult, or incomplete." *Recon Nat. Res., LLC,* 2020 U.S. Dist. LEXIS at *6, citing *Dunning v. Varnau*, 95 N.E.3d 587, 593 (Ohio Ct. App.). Given the nature and magnitude of this event, Plaintiffs will suffer irreparable harm if orders are not entered to prevent Defendants from "removing or otherwise destroy[ing]" the railcars at the derailment site. (Ex. 1, Counsel's letter.) Furthermore, there is no adequate and complete remedy at law or monetary damages for Plaintiffs if Defendants are permitted to remove and destroy relevant physical evidence in this case. Once Norfolk Southern destroys the evidence, to state the obvious, it is gone. Once Norfolk Southern moves the derailed cars, the evidence is forever altered and destroyed.

It is abundantly clear that Plaintiffs will suffer irreparable harm if Defendants are permitted to remove and destroy the 11 hazardous railcars as planned on March 1, 2023. This evidence

cannot be replaced, restored, or recreated once it is removed and destroyed. The positioning of the derailed cars is important is evaluating the site and they should not be moved until sufficient time for inspection is provided. Moreover, onsite inspection is necessary as moving the railcars will likely result in damaging the cars and may increase the risk of leaving critical components behind or buried. Plaintiffs' experts should be permitted adequate notice and time to conduct their inspections in a manner they feel is appropriate and necessary, rather than according to the unilateral terms dictated by Defendants.

        **3.    Harm to Others**

The third factor to consider is whether the temporary restraining order would cause substantial harm to others. Plaintiffs are not aware of any third parties that may be harmed by the issuance of an order to prevent Defendants from removing and destroying evidence from the derailment site. While Plaintiffs understand that Defendants need to move forward with the cleanup efforts on the site, Plaintiffs agree to work expeditiously on a protocol for inspection and experts on site as soon as feasible.

        **4.    Public Interest**

The final factor for consideration is whether issuance of a temporary restraining order would serve the public interest. A temporary restraining order to prevent Defendants from removing and destroying the 11 hazardous railcars from the derailment cite is clearly in the public interest. East Palestine is a town of approximately 4,700 residents. Almost everyone in East Palestine has been impacted by the derailment of Defendants' train and subsequent controlled burn of vinyl chloride. Numerous lawsuits and class action cases have been filed on behalf of residents and business beyond the borders of East Palestine. Multiple town hall meetings have been held since the derailment and there appears to be growing concern that residents and business owners,

all of whom are potential class members, are not getting all the information they need and deserve. Public concern will only grow if Norfolk Southern destroys evidence without giving Plaintiffs' experts time to properly inspect the derailment site and railcars. The public interest in this temporary restraining order to prevent Defendants from removing evidence from the site before it can be properly inspected by Plaintiffs' experts could not be any greater.

### III. CONCLUSION

Based on the foregoing, Plaintiffs' motion for temporary restraining order and preliminary injunction against Defendants should be granted prohibiting Norfolk Southern from removing evidence — including the derailed train cars — from the site of the wreckage and destroying any evidence until Plaintiffs' experts have had a reasonable opportunity to visit the site and collect any information, data and samples they need to form their opinions in this case.

Respectfully submitted,

*s/ Melanie S. Bailey*
Melanie. S. Bailey (OH 0075821)
David C. Harman (OH 0087882)
**BURG SIMPSON ELDREDGE**
**HERSH & JARDINE, P.C.**
201 East Fifth Street, Suite 1340
Cincinnati, OH 45202
513-852-5600
513-852-5611 (fax)
mbailey@burgsimpson.com
dharman@burgsimpson.com

Seth A. Katz (pro hac vice)
**BURG SIIMPSON ELDREDGE**
**HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
303-792-5595

10

303-708-0527 (fax)
skatz@burgsimpson.com

M. Elizabeth Graham, Esq.*
Adam J. Gomez, Esq.*
Tudor I. Farcas, Esq.*
Adam l. Stoltz, Esq.*
Caley DeGroote, Esq*.
**GRANT & EISENHOFER, P.A.**
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
302-622-7000
302-622-7100 (fax)
egraham@gelaw.com
agomez@gelaw.com
tfarcas@gelaw.com
astoltz@gelaw.com
gdegroote@gelaw.com

Douglas J. Olcott, Esq. (OH 0098596)
**EDGAR SNYDER**
**& ASSOCIATES, LLC**
600 Grant Street, 10th Floor
Pittsburgh, PA 15219
412-394-4420
412-391-2386 (fax)
dolcott@edgarsynder.com

*Attorneys for the Plaintiffs and*
*the Putative Class*

*pro hac vice forthcoming

## Certificate of Service

I hereby certify that on February 24, 2023 a copy of foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/ s/ Melanie S. Bailey_____
Melanie S. Bailey